**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                                                    Case No. 17-15012-EPK
                                                                          Chapter 11

FLORIDA ORGANIC AQUACULTURE, LLC.
EIN#27-5555911
_____Debtor._____/


# THE DISCLOSURE STATEMENT OF
# FLORIDA ORGANIC AQUACULTURE LLC
# DATED JULY 21, 2017

### *Table of Contents*

I.    INTRODUCTION ......................................................................................... 4
   A.    Purpose of This Document.......................................................................... 4
   B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ..................... 4
   C.    Disclaimer ............................................................................................ 5
II.   BACKGROUND ......................................................................................... 5
   A.    Description and History of the Debtor ............................................................. 5
   B.    Events Leading to Chapter 11 Filing .............................................................. 6
   C.    Significant Events During the Bankruptcy Case ................................................. 6
   E.    Claims Objections ................................................................................... 8
III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF
CLAIMS AND EQUITY INTERESTS........................................................ 10
   A.    What is the Purpose of the Plan of Reorganization?.......................................... 10
   B.    Unclassified Claims................................................................................. 10
      *1.    Administrative Expenses................................................................. 10*
      *2.    Priority Tax Claims ...................................................................... 12*
      *3.    Priority Wage Claims .................................................................... 12*
   C.    Classes of Claims and Equity Interests .......................................................... 13
      *2.    Classes of General Unsecured Claims ................................................. 20*
      *3.    Classes of Equity Interest Holders .................................................... 23*
      *4.    Scheduled Unsecured Claims Not Receiving Treatment Under the Plan ................. 23*
   D.    Means of Implementing the Plan ................................................................. 25
   E.    Risk Factors.......................................................................................... 25
   F.    Executory Contracts and Unexpired Leases..................................................... 25
   G.    Tax Consequences of Plan ......................................................................... 26
   H.    Distributions Under the Plan...................................................................... 27
IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES ........................... 28
   A.    Who May Vote or Object........................................................................... 28
      *1.    What Is an Allowed Claim or an Allowed Equity Interest?........................... 28*
      *2.    What Is an Impaired Claim or Impaired Equity Interest?........................... 29*
      *3.    Who is Not Entitled to Vote ............................................................ 29*
      *4.    Who Can Vote in More Than One Class ............................................... 29*
   B.    Votes Necessary to Confirm the Plan ........................................................... 29
      *1.    Votes Necessary for a Class to Accept the Plan...................................... 30*
      *2.    Treatment of Non-accepting Classes .................................................. 30*
   C.    Liquidation Analysis ............................................................................... 30
   D.    Feasibility............................................................................................ 31
      *1.    Ability to Initially Fund Plan............................................................ 31*
      *2.    Ability to Make Future Plan Payments And Operate Without Further..................... 31*
      *Reorganization.......................................................................... 31*
V.    EFFECT OF CONFIRMATION OF PLAN ............................................... 32
   A.    DISCHARGE OF DEBTOR....................................................................... 32
   B.    **INJUNCTIONS RELATED TO DISCHARGE** ........................................... 32

**C.    INJUNCTION AGAINST INTERFERENCE WITH THE PLAN** ......................... 33
**D.    RELEASE BY HOLDERS OF IMPAIRED CLAIMS** ................................................. 33
E.    MODIFICATION OF PLAN ................................................................................. 33
F.    FILING OF MONTHLY OR QUARTERLY OPERATING REPORSTS AND U.S.
TRUSTEE FEES ................................................................................................................ 34
**G.    EFFECT OF CONFIRMATION** ....................................................................... 34
    1.    *Continued Corporate Existence* ................................................................ *34*
    2.    *Vesting of Assets* ................................................................................................ *34*
**H.    RETENTION OF JURISDICTION** ...................................................................... 34
VI    CONCLUSION ............................................................................................................ 35

## I.   INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of FLORIDA ORGANIC AQUACULTURE LLC.   (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Debtor's Plan of Reorganization (the "Plan") filed by the Debtor on July 21, 2017.  A full copy of the Plan was filed with this Court (ECF#50) concurrently with this Disclosure Statement and is referenced as **Exhibit A**.

*Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

### A.   Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.* what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Proponents believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.   *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on _____, 2017 at _____ a.m., in Courtroom B, 1515 Flagler Drive, 8ᵗʰ Floor, West Palm Beach, FL 33401.

2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and mail the ballot to the Clerk of Bankruptcy Court, 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401. See Section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ 2017 or it will not be counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Markarian Frank & Hayes, 2925 PGA Blvd., Suite 204, Palm Beach Gardens, FL 33410 by _____2017.

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Malinda L. Hayes, Esq., Markarian Frank & Hayes, P.A., 2925 PGA Blvd., Suite 204, Palm Beach Gardens, FL 33410.

**C.      Disclaimer**

***The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval. Objections to the adequacy of this Disclosure Statement may be filed until _____.***

## II.      BACKGROUND

**A.      Description and History of the Debtor**

Over twelve years ago Florida Organic Aquaculture founder, Clifford Morris, identified sustainable food production as a potentially lucrative growth sector to seek entry into. Morris set about putting the pieces together and between 2008 and today built a state of the art facility for sustainable shrimp production. The Debtor breeds, processes and sells all-natural shrimp for the US domestic market in a scientifically advanced, indoor and bio-secure aquaculture facility. The operation is located on 100 acres in Fellsmere, Indian River County, Florida. Debtor's two production buildings span the length of 3½ US football fields each, and can house 20 individual

"raceways," each of which holds over 350,000 shrimp. The facilities also include a 2300- feet deep Ocean quality seawater well, which provides pristine and warm saline water perfect for growing shrimp, and a shrimp hatchery. On-site hatchery and nursery facilities are able to produce their own premium larval, or baby shrimp.

### B.    Events Leading to Chapter 11 Filing

The concept of a technologically advanced sustainable, intensive, indoor shrimp farm was a new concept and whilst it was possible to secure investment funds, this effort took significantly longer than anticipated.  The funds procured to develop the project ran out around completion of the second building, and the company has not been able to reach full production capacity due to lack of additional funding.  Approximately $1,5m is needed to fund production and operating expenses until all 36 raceways are operating at full capacity.

In the interim between capital inflows the company had to keep moving forward and consumed a lot more working capital or "Burn-Rate" as it is known, this factor combined with the many challenges faced taking a concept, well proven in an academic environment, to commercial scale also presented lost time to market. Additionally, in hind-sight, the company was over staffed in anticipation of a continued build out and growth pattern.

In 2016, the Debtor took steps internally to revamp its finances in an effort to avoid filing. Overhead was trimmed, initially in a manner that would have allowed for an accelerated ramp up, should solid funding materialize. As the funding appeared more and more elusive steps were taken to dramatically reduce staff and expenses.

Other cost saving measures were deployed, such as switching from advance/bulk ordering to the JIT (Just in Time) feed inventory method, and elimination of non-essential activates such as research on the use of wastage (Heads and Shells). The CFO was also let go in August 2016.

Well over $1,5m was trimmed from annual overheads, but it was unfortunately too late. FOA is currently in a soft shutdown operating at a very low level of capacity, while seeking the cash infusion needed to ramp up production to full levels.

The Debtor filed for Chapter 11 protection on April 24, 2017 (the "petition date").

### C.    Significant Events During the Bankruptcy Case

The Debtor has been operating pursuant to §§1107(a) and 1108 of the Bankruptcy Code. It sought and obtained approval to employ Attorney Malinda L. Hayes at the law firm of Markarian Frank & Hayes, by this Court's order dated May 19, 2017 (ECF#32).

The Debtor intends to seek approval to retain Attorney John Urban as Special Counsel to litigate appeals in in the District court of Florida in the matter of Advent Environmental Systems, LLC v. Florida Organic Aquaculture, LLC and will seek stay relief to proceed with the appeal of

that matter. The Appeal relates to a claim owed by the Debtor for legal fees in connection with a prior proceeding, and success in the Appeal would reduce this claim against the Debtor. At this time, the Debtor is unaware of any administrative claims incurred by any of the attorneys approved as Special Counsel.

During the chapter 11 case, the Debtor has been negotiating a request for reconsideration of a pre-petition claim held by the Florida Department of Financial Services, Division of Worker's Compensation. As a result of the request for re-review of the assessment, the Department has agreed to reduce the claim from $55,245.64 to $33,047.46. After execution of the settlement agreement, the Debtor will seek approval of the settlement from the Bankruptcy Court.

On June 29, 2017, the City of Fellsmere issued a Courtesy Warning to the Debtor with regard to the long-term plan for development of the Debtor's facility. There is an on-going collaboration between the City and the Debtor to maximize use of the land on which the Debtor is operating. One issue related to the current escrow shortage on the project of around $20,000. The escrow shortage was first brought to the Debtor's attention after the warning was issued. The escrow arrears will be paid in full and a new escrow provided prior to the City approving project. The new escrow amount will be determined once the Debtor and the City decide how the project is to proceed. The City has agreed to accept payments over time, to be paid after the new escrow is determined. The second issue related to the site plan approval. Originally, the City approved the project at the staff level. Then, once modifications from the approved plan were constructed, the City realized the departures from code were such that approval had to be by Planned Development to allow for such variances. The Debtor, the landlord and the City worked through nearly all if the issues and there are three outstanding items: 1) the final set of revised plans; 2) the signed authorization from the landlord, and 3) a revised guarantee from FOA/SAI. Debtor is working with the City and the landlord to resolve the outstanding issues and to get the project approved. Debtor does not anticipate any negative action from the City of Fellsmere related to this courtesy warning.

Just prior to the bankruptcy filing, John Deere repossessed some equipment belonging to the Debtor (see the Debtor's Statement of Financial Affairs for a precise description of the equipment). An auction was held just days prior to the bankruptcy filing, but John Deere had not yet been paid for the equipment when the case was filed. The Debtor engaged in negotiations with John Deere to attempt to recover the equipment. However, the amount that the Debtor was asked to pay to redeem the equipment was slightly higher than the value of the equipment, and so the Debtor ultimately decided not to redeem the equipment and to allow the sale to be finalized. Although the equipment is listed as an asset on the Debtor's Schedule B, and John Deere listed as a secured creditor on Schedule D, the John Deere claim has been satisfied by the repossession and sale of the equipment, and the fully encumbered equipment is no longer property of the Debtor. John Deere will not receive treatment under the Debtor's Plan.

The Debtor is presently seeking approval to retain a financing consultant and sales broker, EQUITY PARTNERS HG, to facilitate the implementation of this Plan (ECF#45). If approved, the broker will receive a fee in the event of a loan, refinance, or sale of the company of

approximately $250,000 paid out of the cash at the time of the transaction. The terms of payment vary depending on the type of transaction and are set forth more specifically in the retainer agreement attached to the sale motion, which was served on all creditors, and it is available upon written request from Debtor's counsel. A hearing on approval of the broker is scheduled for July 26, 2017.

Debtor sought approval for post-petition financing [ECF#15]. Three interim orders were approved [ECF#23, 36 and 42]. A hearing on final approval of the Debtor's Emergency Motion for Order Authorizing Post-Petition Financing and Approving Financing per 11 U.S.C. § 364(b) is scheduled for July 27, 2017. Debtor has been receiving short term financing on a monthly basis to supplement revenues from shrimp production and to fund its operations. The current balance of the post-petition financing is approximately $250,000 and it is expected that the Debtor will continue to borrow approximately $90,000 per month until long term financing is secured or a sale of the company is approved. It is anticipated that the financier, Mirzam Venture Capital LLC, (a part owner of the Debtor's operation) will seek approval of the financed sums as an administrative expense in the Debtor's case.

This Court entered an Order Shortening Time for Filing Proofs of Claim, Establishing Plan and Disclosure Statement Filing Deadlines, and Address Related Matters [ECF#29] which set a deadline to file a Plan and Disclosure Statement on or before August 22, 2017. The exclusivity period and the corresponding deadline for filing a Plan and Disclosure Statement was shortened to July 21, 2017 as per paragraph 9 of the Third Interim Order on Debtor's Emergency Motion for Order Authorizing Post-Petition Financing and Approving Financing per 11 U.S.C. § 364(b) [ECF#42].

### D.    Projected Recovery of Avoidable Transfers

Debtor is still assessing the impact of potential preferences and other potential avoidance actions. The Plan proposes to pay 100% of all claims if financing is secured and successful reorganization achieved. In the event that the Debtor's assets are sold and less than 100% recovery is available to creditors, then the Debtor will pursue any known preference, fraudulent conveyance, and other avoidance actions in order to maximize recovery for creditors.

### E.    Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

The Debtor has not objected to any claims timely filed in this case, but reserves the right to so object prior to the expiration of the claims objection deadline.

### F.    Current and Historical Financial Conditions

A summary of the most recent post-petition operating report filed in the Debtor's bankruptcy case is attached as **Exhibit B**.  Copies of the Debtor's monthly operating reports are available upon written request to Markarian, Frank, & Hayes.

### G.    Insiders of the Debtor

As defined by §101(31) of the United States Bankruptcy Code (the "Code"), the Insider of the Debtor are Mirzam Green Card Partners I, LP (49% interest in the Debtor) and Mirzam Venture Capital, LLC. (51% interest in the Debtor).

In the year prior to the commencement of the filing for bankruptcy relief by the Debtor, Clifford Morris received compensation for services performed on behalf of the Debtor in the amount of $68,000. During the pendency of this chapter 11 case, Mr. Morris received $23,538 in compensation for services performed on behalf of the Debtor.

### H.    Management of the Debtor Before, During and After the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officer, director, manager or other person in control of the Debtor (collectively the "Manager") was Clifford Morris.  Mr. Morris is solely responsible for major decision making and for the day to day management of the Debtor.  Prior to the bankruptcy filing, the Debtor also had a C.F.O. who was in charge of the day to day financial decisions and involved in some major financial decision making for the Debtor. Pieter Jansen was terminated during August 2016 prior to the bankruptcy filing.

The Debtor is unable to definitively state at this time who will be responsible for management of the Debtor after confirmation of the Plan. Mr. Morris intends to be instrumental in the management of the Debtor after reorganization, but is open to any contingency that may be required if an equity partner joins the company to provide the necessary cash infusion.  There is also a possibility that the Debtor's assets will be sold, in which case Mr. Morris will manage the Debtor only through consummation of the sale and long enough to finalize the chapter 11 proceeding. Additional disclosures will be made in the form of a Plan and Disclosure Supplement, to be filed as soon as financing, an equity partner, or a purchaser has been secured, but no later than ninety days from the date of this Plan.

During the bankruptcy case, Mr. Morris's salary was authorized at $8,500 per month from May 2017 through July 2017.  If the bankruptcy is concluded with a successful reorganization, Mr. Morris will continue to take a salary of $8,500 per month until such time as the Debtor's finances allow for an increase in pay.

## III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has not placed the following claims in any class:

### 1.    Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|------|----------------------|--------------------|
|      |                      |                    |

| | | |
|---|---|---|
| Professional Fees, as approved by the Court. | $40,000.00 ($15,000.00 received by Debtor's attorney as an advance, and $5,000 received from Mirzam Venture Capital LLC will be applied, with an estimated balance due from Debtor of $15,000) | Balance due paid in full on or before the effective date, or according to court order if such fees have not been approved by the court on the effective date of the plan. |
| Office of the U.S. Trustee Fees | $3,250 (projected quarterly fees for second and third quarters of 2017) | Paid in full on the effective date of the Plan. All fees due under 1129(a)(12) shall be paid as required by 28 U.S.C. §1930.  The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), on the effective date of the Plan. The Debtors, as reorganized Debtors, shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(A)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6), based upon all post-confirmation disbursements made by the reorganized Debtors, until the earlier of the closing of this case by the issuance of an Order administratively closing the case, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case. |
| Mirzam Venture Capital LLC (post-petition financing, contingent on approval of loan as administrative expense) | $416,000 (projected financing to date, $250,000, plus $166,000 for an additional 60 days) | To the extent allowed under § 503(b), the administrative claim shall be paid in full within 24 months under a successful reorganization of the Debtor. In the event of a sale of the Debtor's assets, then the administrative claim shall be paid in full from the sale proceeds. |
| ESTIMATED NET TOTAL (after application of advance fee deposits) | $434,250 | |

### 2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Any Allowed Priority Claim shall be paid in equal monthly installments, at the statutory rate of interest, over a period not exceeding 5 years from the petition date. Any statutory tax liens shall be retained until paid in full.

The deadline for governmental claims has not yet passed, but the following claims have been scheduled by the Debtor or filed:

The Internal Revenue Service has filed a priority tax claim in the amount of $2,506.75 + federal statutory interest for the tax years 2014, 2015, 2016 and 2017 as listed in its proof of claim (Claim #2). Debtor disputes these amounts, as they are for estimated amounts based on unfiled returns which are, in fact, not required and for which no tax is owed. The claim will be subject to dispute if not amended by the IRS.

The Indian River County Tax Collector has filed a priority, secured tax claim to for 2016 Tangible Property Tax in the amount of $17,421.77 + 18% Statutory interest (Claim #5). Debtor disputes the amount of the assessment, and shall dispute the claim if not amended by the Tax Collector.

The Debtor is obligated to pay priority, secured tax claim to Indian River County Tax Collector for 2017 Estimated Tangible Property Tax in the amount of $17,154.45 + 18% Statutory interest (Claim #6). Debtor disputes the amount of the assessment, and shall dispute the claim if not amended by the Tax Collector.

The Debtor is not aware of any other Priority tax claims.

Any potential claimholders in this class are not impaired and are therefore not entitled to vote on the Plan.

Attached hereto as **Exhibit C** is a description of all Priority Tax Claims filed against the Debtor.

### 3.    **Priority Wage Claims**

Each holder of an Allowed Priority Wage claim under § 507(a)(4) shall receive cash on the effective date equal to the Allowed amount of such Claim, except to the extent that a holder of an Allowed Priority Wage Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment.

The Debtor is not aware of any priority wage claims filed in this case.

Any potential claimholders in this class are not impaired and are therefore not entitled to vote on the Plan.

### C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.    Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate or that are subject to setoff to the extent allowed as secured claims under §506 of the Code.   The Plan provides for one class of Allowed Secured Claims.

| Class # | Description | Treatment |
|---|---|---|
| I. | **Allowed Secured claim of Direct Capital Corporation**<br><br>*Collateral:* Blanket lien on all property of the Debtor<br><br>*Priority of lien:* first<br><br>*Total claim:* $67,098.90<br><br>*Amount secured:* $56,300<br><br>Unsecured portion: $10,798.90<br><br>*Claim # 8* | *Impairment:* Impaired<br><br>*Insider:* No<br><br>*Treatment:*<br>Claim shall be treated as partially secured in accordance with the amounts specified on the Creditor's Proof of Claim, unless modified by separate order of the Bankruptcy Court.<br><br>Creditor's Allowed Secured Claim will be fully amortized over 7 years and accrue interest at the fixed rate of 4%. The principal balance of the Note may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied.<br><br>The unsecured balance shall be treated in Class XII below.<br><br>The creditor is not entitled to post-petition attorney's fees or interest.<br><br>The Class I claimholder is entitled to vote on the Plan. |

| | | |
|---|---|---|
| **II.** | **Allowed Secured claim of First Home Bank**<br><br>*Collateral*:<br>Blanket lien on all property of the Debtor<br><br>*Priority of lien*: second<br><br>*Total allowed secured claim*:<br>$5,359,368.90<br><br>*Claim # 12* | *Impairment*: Impaired<br><br>*Insider*: No<br><br>*Treatment*:<br>Claim shall be treated as fully secured in accordance with the amounts specified on the Creditor's Proof of Claim, unless modified by separate order of the Bankruptcy Court.<br><br>Creditor's Allowed Secured Claim will be paid as follows: Regular monthly installments of $5,000 per month, commencing on the effective date and continuing for the first twelve months of the Plan; then regular monthly installments of $20,000 per month for the next twelve months; the remaining balance of the loan shall then be amortized over twenty two years and paid in equal months installments. The claim shall incur interest at a rate of 4% per annum, commencing on the effective date. The principal balance of the Note may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect, except those terms related to the borrower or guarantor's financial condition and account reserve requirements, including section 7.9 and 7.12 of the Loan Agreement. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied.<br><br>The creditor is not entitled to post-petition attorney's fees or interest.<br><br>The Class II claimholder is entitled to vote on the Plan. |

| III. | **Allowed Secured claim of Mirzam Venture Capital LLC**<br><br>*Collateral*:<br>Blanket lien on all of Debtor's assets<br><br>*Priority of lien:* third<br><br>*Total allowed secured claim*:<br>$4,800,000.00<br><br>*Claim #15* | *Impairment:* Impaired<br><br>*Insider*: Yes<br><br>*Treatment:*<br>Claim shall be treated in accordance with the amounts specified on the Creditor's Proof of Claim, unless modified by separate order of the Bankruptcy Court.<br><br>Creditor's Allowed Secured Claim will be voluntarily subrogated to all other claims in the claim and paid only if cash flow allows after all other plan payments. Cash flow permitting, the claim will be paid as follows: $5,000 per month in regular monthly installments for the first twelve months of the Plan, commencing on the effective date; then commencing in month 13, payments comprising 70% of the Debtor's net cash flow, after payment of all expenses and plan payments, until the loan is repaid in full. The loan will accrue interest at a rate of 4% per annum. The principal balance of the Note may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied.<br><br>The unsecured balance shall be treated in Class XII below.<br><br>The creditor is not entitled to post-petition attorney's fees or interest.<br><br>The Class III claimholder is entitled to vote on the Plan. |

| IV. | **Allowed Secured claim of M2Lease Fund**<br><br>*Collateral:*<br>One (1) Caterpillar Diesel Generator Sound Attenuated Enclosure and accessories<br><br>*Priority of lien:* First lien on financed equipment<br><br>*Total allowed secured claim:*<br>$47,895.00<br><br>*Claim # 9* | *Impairment:* Impaired<br><br>*Insider:* No<br><br>*Treatment:*<br>Claim shall be treated as fully secured.<br><br>Creditor's Allowed Secured Claim will be fully amortized over 7 years and shall be paid without interest, due to prospective interest being included in the claim amount. The claim may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied.<br><br>The unsecured balance shall be treated in Class XII below.<br><br>The creditor is not entitled to post-petition attorney's fees or interest.<br>The Class IV claimholder is entitled to vote on the Plan. |

| V. | **Allowed Secured claim of Ozone International** <br><br> *Collateral*: Ozone system with monitor <br><br> *Priority of lien*: First on financed equipment <br><br> *Total allowed secured claim*: $48,000.00 (scheduled amount) <br><br> *Claim # no claim filed* | *Impairment*: Impaired <br><br> *Insider*: No <br><br> *Treatment*: <br> Claim shall be treated as partially secured as set forth in separate order of the Bankruptcy Court. <br><br> Creditor's Allowed Secured Claim will be fully amortized over 7 years and shall be paid without interest, due to prospective interest being included in the claim amount. The principal balance of the Note may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied. <br><br> The maintenance component of the finance agreement shall remain in full force and effect throughout the duration of the repayment period. <br><br> The unsecured balance shall be treated in Class XII below. <br><br> The creditor is not entitled to post-petition attorney's fees or interest. <br><br> The Class V claimholder is entitled to vote on the Plan. |
|---|---|---|

| | | |
|---|---|---|
| **VI.** | **Allowed Secured claim of Royal Bank America Leasing, L.P.**<br><br>*Collateral:*<br>One (1) Caterpillar Diesel Generator<br><br>*Priority of lien:* first lien on equipment financed<br><br>*Total allowed secured claim:*<br>$166,462.64<br><br>*Claim # 14* | *Impairment:* Impaired<br><br>*Insider:* No<br><br>*Treatment:*<br>Claim shall be treated as fully or partially secured in amounts to be set forth by further order of the Bankruptcy Court.<br><br>Creditor's Allowed Secured Claim will be fully amortized over 7 years and shall be paid without interest, due to prospective interest being included in the claim amount. The principal balance of the Note may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied.<br><br>The unsecured balance shall be treated in Class XII below.<br><br>The creditor is not entitled to post-petition attorney's fees or interest.<br><br>The Class VI claimholder is entitled to vote on the Plan. |
| **VII.** | **Allowed Secured claim of Star Capital Group**<br><br>*Collateral:*<br>2010 John Deere 544K Loader<br><br>*Priority of lien:* first position on equipment financed<br><br>*Total allowed secured claim:*<br>$45,490.00 (scheduled amount)<br><br>*Claim # no claim filed* | *Impairment:* Impaired<br><br>*Insider:* No<br><br>*Treatment:*<br>Claim shall be treated as fully secured.<br><br>Creditor's Allowed Secured Claim will be fully amortized over 7 years and shall be paid without interest, due to prospective interest being included in the claim amount. The principal balance of the Note may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied.<br><br>The creditor is not entitled to post-petition attorney's fees or interest.<br><br>The Class VII claimholder is entitled to vote on the Plan. |

| VIII. | **Allowed Secured claim of Terramar Development, LLC**<br><br>*Collateral*: Rav4<br><br>*Priority of lien:* First on a Rav 4<br><br>*Total allowed secured claim:* $62,000.00 (scheduled amount)<br><br>*Claim # no claim filed* | *Impairment:* Impaired<br><br>*Insider*: No<br><br>*Treatment:*<br>Claim shall be treated in accordance with the amounts specified on the Creditor's Proof of Claim, unless modified by separate order of the Bankruptcy Court.<br><br>Creditor's Allowed Secured Claim will be fully amortized over 7 years and shall be paid in equal monthly installments at 5% interest. The principal balance of the Note may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied.<br><br>The unsecured balance shall be treated in Class XII below.<br><br>The creditor is not entitled to post-petition attorney's fees or interest.<br><br>The Class VIII claimholder is entitled to vote on the Plan. |

| IX. | **Allowed Secured claim of US Bank** <br><br> *Collateral:* Deepchill Production Storage System, Aqua Life Biostream, and Fish Pump System <br><br> *Priority of lien:* first on financed equipment <br><br> *Total allowed secured claim:* $42,686.42 (scheduled amount) <br><br> *Claim # no claim filed* | *Impairment:* Impaired <br><br> *Insider:* No <br><br> *Treatment:* Claim shall be treated as fully secured. <br><br> Creditor's Allowed Secured Claim will be fully amortized over 7 years and shall be paid without interest, due to prospective interest being included in the claim amount. The principal balance of the Note may be paid in full at any time without a prepayment penalty. All other terms and conditions in the loan documents not otherwise modified by the Debtor's Plan shall remain in full force and effect. Creditor shall retain its liens until the total allowed secured claim is paid in full, at such time Creditor shall be obligated to execute the necessary documents to release its liens. In the event the Creditor does not timely release its liens, the Plan, the Order Confirming the Plan, and proof of payment of the full claim shall constitute evidence that the lien has been satisfied. <br><br> The creditor is not entitled to post-petition attorney's fees or interest. <br><br> The Class IX claimholder is entitled to vote on the Plan. |
|---|---|---|

### 2.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.   The Plan provides for one class of General Unsecured Claims.

| Class # | Description | Treatment |
|---|---|---|
| | | |

| X. | **Allowed General Unsecured Claims of $4,000 or less**<br><br>**(First Administrative Convenience Class)** | *Impairment*: Impaired<br><br>*Insider*: No<br><br>*Treatment:* This class consists of all Allowed General Unsecured Claims of less than $4,000 as an administrative convenience class pursuant to §1122(b) of the Code, totaling approximately $22,566.85. Claimholders with Allowed General Unsecured Claims of less than $4,000 shall receive a one-time distribution of the full amount of their claim without interest within 90 days of the effective date.<br><br>A creditor with an Allowed General Unsecured Claim of $4,000 or higher may elect to reduce its claim to $3,999 and receive a one-time distribution rather than payments over time by submitting a written request to Debtor's counsel.  This election should be indicated in writing on the ballot filed with the Court.<br><br>Attached hereto as **Exhibit C** is a description of all Scheduled General Unsecured Claims and all other General Unsecured Claims filed against the Debtor.<br><br>The Class X claimholders are entitled to vote on the Plan. |

| | | |
|---|---|---|
| **XI.** | **Allowed General Unsecured Claims of $4,000 to $9,000**<br><br>**(Second Administrative Convenience Class)** | *Impairment*: Impaired<br><br>*Insider*: No<br><br>*Treatment:* This class consists of all Allowed General Unsecured Claims between $4,000 and $9,000 as an administrative convenience class pursuant to §1122(b) of the Code, totaling approximately $48,983.77. Claimholders with Allowed General Unsecured Claims between $4,000 and $9,000 shall have their claim paid in full in regular monthly installments, without interest, over one (1) year from the effective date.   Payments shall commence within thirty (30) days of an entry of an order confirming the Debtor's Chapter 11 Plan of Reorganization.<br><br>A creditor with an Allowed General Unsecured Claim higher than $9,000 may elect to reduce its claim to $9,000 and receive payment in full in regular monthly installments over one (1) year by submitting a written request to Debtor's counsel. This election should be indicated in writing on the ballot filed with the Court.<br><br>Attached hereto as **Exhibit C** is a description of all Scheduled General Unsecured Claims and all other General Unsecured Claims filed against the Debtor.<br><br>The Class XI claimholders are entitled to vote on the Plan. |
| **XII.** | **Allowed General Unsecured Claims** | *Impairment*: Impaired<br><br>*Insider*: No<br><br>*Treatment:* This class consists of all Allowed General Unsecured Claims greater than $9,000, totaling approximately $1,178,197.90. Claimholders with Allowed General Unsecured Claims greater than $9,000 will receive the following dividends over a period of five years, to be divided pro rata:  $3,000 per month for the first twelve months, $10,000 per month for the following twelve months, $28,116.61 per month for the next 36 months. Payments shall commence within thirty (30) days of an entry of an order confirming the Debtor's Chapter 11 Plan of Reorganization.<br><br>Attached hereto as **Exhibit C** is a description of all Scheduled General Unsecured Claims and all other General Unsecured Claims filed against the Debtor.<br><br>The Class XII claimholders are entitled to vote on the Plan. |

### 3.    *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company (LLC), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The Plan provides for one class of equity holders.

| Class # | Description | Treatment |
|---|---|---|
| XII. | **Equity Interest Holders** | *Impairment:* Unimpaired<br><br>*Insider:* Yes<br><br>*Treatment:* Equity interest holders shall retain their equity interests.<br><br>Class XII claimholders are not entitled to vote, as they are deemed to have accepted the Plan. |

### 4.    *Scheduled Unsecured Claims Not Receiving Treatment Under the Plan*

The following claims were listed on the Debtor's Schedule F as disputed, as well as claims that were filed for which no claim was scheduled. If a proof of claim is not timely filed, then claims will not receive treatment under the Debtor's Plan. Note that, as of the date of this Disclosure Statement, bar dates for all forms of claims have not yet passed, so these claims may receive treatment under their respective classes if a claim is timely filed. *Entry of an order confirming the Debtor's Plan of Reorganization shall act as a permanent injunction forever barring any and all enforcement or collection efforts against the Debtor arising from these disputed pre-petition debts:*

Business GPS, LLC arising from professional services in amount of $26,808.33 and listed on Schedule F as unliquidated and disputed. Business GPS, LLC did not file a proof of claim. Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

City of Fellsmere, arising from an audit of city roads in the amount of $27,332.85 listed on Schedule F as disputed. City of Fellsmere did not file a proof of claim. Unless a claim is timely

filed, this scheduled claim will not receive treatment under the Debtor's Plan.  Debtor disputes liability for this claim, as the road were installed for the benefit of the City, and if a claim is filed, the Debtor will object to the claim.

Florida City Gas (#2494), arising from utility services to the Debtor in the amount of $51,709.34 listed on Schedule F as unliquidated and disputed.  Florida City Gas did not file a proof of claim.  Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

Gregor Jonsson, Inc., arising from an equipment lease to the Debtor in the amount of $33,711.24 listed on Schedule F as unliquidated and disputed.  Gregor Jonsson, Inc. did not file a proof of claim.  Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

Guarantee Insurance Company, arising from Workers Compensation Insurance in the amount of $9,532.00 listed on Schedule F as disputed.  Guarantee Insurance Company did not file a proof of claim.  Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

Herc Rental Inc, arising from an equipment lease to the Debtor in the amount of $32,809.73 listed on Schedule F as unliquidated and disputed.  Herc Rental Inc did not file a proof of claim. Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

ImageNet, arising from printer supplies to the Debtor in the amount of $662.49 listed on Schedule F as disputed.  ImageNet did not file a proof of claim.  Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

Intelligent Global Pooling Systems, arising from pallets suppled to the Debtor in the amount of $5,525.00 listed on schedule F as unliquidated and disputed.  Intelligent Global Pooling Systems did not file a proof of claim.  Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

Smart Building Florida, arising from services provided to the Debtor in the amount of $38,901.36 listed on Schedule F as unliquidated and disputed.  Smart Building Florida did not file a proof of claim.  Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

State of Florida Division of Worker's Compensation, arising from a worker's compensation penalty to the Debtor in the amount of $54,245.64 listed on Schedule F as unliquidated and disputed.  State of Florida Division of Workers Compensation has not yet filed a

proof of claim, however the Debtor is in communications with the Creditor and anticipates that a claim will be timely filed.

United Rentals, arising from an equipment lease to the Debtor in the amount of $28,910.03 listed on Schedule F as unliquidated and disputed. United Rentals did not file a proof of claim. Unless a claim is timely filed, this scheduled claim will not receive treatment under the Debtor's Plan.

**This list reflects only those Unsecured Claims not receiving treatment under the Plan that were listed on the Debtor's Schedules, but for which no proof of claim was timely filed. Objections to Claims will be filed prior to the Objection deadline. This list is in no way meant to limit the Debtor's ability to object to additional Claims.**

### D.    Means of Implementing the Plan

Payments and distributions under the Plan will be funded by revenues generated from the Debtor's business operations, which require a cash infusion to reach full capacity. The funding of the Debtor's Plan is dependent on a cash infusion of approximately $1.5m.

### E.    Risk Factors

The proposed Plan has the following risks:

Plan distributions will be funded from revenues generated by the Debtor's business, However, it also contemplates full production capacity, which is only possible if the Debtor secured financing or an equity infusion from a new equity partner. There is a high risk that the cash infusion will not be secured, and then the Debtor will have to be sold either as a going concern or liquidated. The Debtor is committed to devoting the next 90 days to marketing the property for sale as a going-concern, and has employed a sales broker for this purpose, while continuing, simultaneously, to seek financing and an equity partner. The sales broker is also a financing specialist who will actively seek equity partners and financing options. Within 90 days of the date of the Plan, the Debtor will provide additional disclosures, indicating whether funding has been secured, seeking to approve a sale, or proposing liquidation procedures.

### F.    Executory Contracts and Unexpired Leases

The Plan, in Article 6.01, and as indicated below, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6.01 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6.01 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*The court shall direct as to a Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract pursuant to Fed. R. Bankr. P. 3003(c)(3) and 3002(c)(4).* Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

Debtor is a party to the following executory contracts and unexpired leases:

| Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|
| Agricultural land lease and agreement for 90.28 acres | No | Not impaired | Debtor shall assume lease with Fellsmere Joint Venture LLC. |
| Agricultural land lease and agreement for packhouse and 10 acres assigned to Sustainable Aquaculture Initiative, LLC | No | Not impaired | Debtor shall retain performance obligations. |
| Equipment Lease | No | Not impaired | Debtor shall assume lease with Terramar Development LLC. |
| Assignment of commercial lease in real estate (32 N. Broadway, Fellsmere, FL) retail store | No | Not impaired | Debtor shall assume lease with Terramar Development LLC. |

## G.    Tax Consequences of Plan

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

There are no known tax consequences to the Creditors of this Plan. The Debtor renders no opinion as to its effect on any creditor.

### H.    Distributions Under the Plan

Subject to Rule 9010, and except as otherwise provided in Section 5.03 of the Plan, all distributions under the Plan shall be made by the Reorganized Debtor to the holder of each Allowed Claim or Allowed Equity Interest at the address of such holder as listed on the Schedules and/or proof of claim as of the Effective Date, unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

No payment of Cash less than Ten Dollars ($10.00) shall be made by the Reorganized Debtor to any holder of a Claim unless a request therefore is made in writing to the Reorganized Debtor, or unless the Distribution is a final Distribution.

When any Distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 5.02 of the Plan.

Any distributions of Cash or other property under the Plan that is unclaimed for a period of six (6) months after the Distribution Date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

### 1.    *Distributions Withheld for Disputed General Unsecured Claims*

On the initial Distribution Date and each subsequent Distribution Date, the Reorganized Debtor shall reserve an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtor or the Court in accordance with Section 5.03 of the Plan (the "**Disputed Claims Reserve**"). The holders of Allowed General Unsecured Claims shall not be impacted based on the funding of the Disputed Claims Reserve.

### 2.    *Distribution Upon Allowance of Disputed General Unsecured Claims*

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor within ninety (90) days following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan provisions relating to the distributions to the holders of Allowed General Unsecured Claims.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in §1129, and they are not the only requirements for confirmation.

The Debtor's Plan of reorganization is feasible, as positive cash flow will allow it to meet all of its expenses. Restructuring will reduce the Debtor's monthly debt service such that it will be able to pay all expenses and Plan payments going forward.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes I and II are impaired, and are therefore entitled to vote to accept or reject the Plan. The Plan Proponents believe that Class III is unimpaired and that equity interest holders therefore, do not have the right to vote to accept or reject the Plan.

### 1.    What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the

claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case is <u>July 24, 2017</u> for all nongovernmental creditors. The deadline for governmental entities expires <u>October 21, 2017</u> The deadline for filing objections to claims is* _____.

### 2.    What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.    Who is Not Entitled to Vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.*

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class,

and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### 1.    Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2.    Treatment of Non-accepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.    Liquidation Analysis

As with any Plan, an alternative would be a conversion of the Chapter 11 case to a Chapter 7 case and subsequent liquidation of the Debtor's assets by a duly appointed or elected trustee.

In the event of a Chapter 7 liquidation, an additional tier of administrative expenses entitled to priority over general unsecured claims under § 507(a)(1) of the Bankruptcy Code would be incurred.  Such administrative expenses would include Trustee's commissions and fees to the Trustee's accountants, attorneys and other professionals likely to be retained by the Trustee for the purposes of liquidating the Debtor's assets.

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

The Debtor's assets are particularly difficult to value, as the Debtor owns no real property, and First Home Bank holds a lien on all of the Debtor's assets, including the leasehold interest and

improvements, securing a claim of nearly $5.5 million. The majority of the Debtor's equipment is encumbered by equipment finance liens, or by the blanket lien in favor of First Home Bank. It is unlikely that in a liquidation scenario, any funds would be left over for payment to unsecured creditors. In a sale of the Debtor's operation as a going concern, the market will dictate the value of the Debtor's operation. The Debtor is in the process of retaining a sales broker to market the operation for sale as a going concern, in order to preserve value for the benefit of its creditors, as well as continuing to seek financing or an equity partner who will be able to make the cash infusion necessary to jump start the Debtor's operation.

The Plan proposes to pay a 100% of all general unsecured claims in a reorganization scenario, provided that the Debtor is able to secure additional funding in the form of financing or an equity infusion by a new equity partner, within 90 days of the date of the Plan. In a chapter 7 liquidation, there would likely be no funds available for general unsecured creditors. All holders of Claims and Interests would receive at least this amount or higher under the Plan, and therefore the Plan meets the test required by 11 U.S.C. § 1129(a)(7).

### D.      Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### 1.      *Ability to Initially Fund Plan*

If the Debtor is able to secure financing or an equity partner that will make the cash infusion needed to jump start the Debtor's operation to reach full production capacity, then the Debtor will have enough cash on hand on the effective date of the Plan to pay all the expenses that are entitled to be paid on that date. If additional funding is not secured within 90 days, then the Debtor will either sell its operation as a going concern or liquidate the operation on terms mutually agreeable to First Home Bank.

#### 2.      *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponents have provided projected financial information. Those projections are listed in **Exhibit D,** which show that the Plan Proponent will have enough cash to continue operating such that additional reorganization is not necessary, provided that the Debtor secures financing or an equity partner that will make the cash infusion needed to jump start the Debtor's operation to reach full production capacity. With the cash infusion, the Debtor will cash flow positive within 7 months. The Plan Proponent's financial projections show that the Debtor will be fully capable of meeting its on-going obligations under this Plan.

In the event that the proposed financing or equity infusion is not obtained within 90 days of the date of the Plan, the Debtor will commit to a sale or liquidation of its operation under terms mutually agreeable between the Debtor and First Home Bank. It is unlikely, under a liquidation scenario, that any unsecured creditors will receive payment on their claims. If the Debtor is able to sell the operation as a going concern – a possibility that the Debtor is presently exploring – then a motion to approve the sale will be filed with the Court, setting forth all sale terms, and the funds will be held in escrow pending payment to creditors in accordance with the priorities set forth in the Bankruptcy Code.

Additional disclosures will be provided to all creditors, regarding the possibility of financing, sale or liquidation of the Debtor within 90 days of the date of the Plan.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V.    EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

Discharge. On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in §1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B.    INJUNCTIONS RELATED TO DISCHARGE

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest against the Debtor, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest. Such injunctions shall extend to successors of the Debtor*

*(including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.*

### C.    INJUNCTION AGAINST INTERFERENCE WITH THE PLAN

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

### D.    RELEASE BY HOLDERS OF IMPAIRED CLAIMS

*The Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtor may have against the Debtor. In consideration of the obligations of the Debtor, the Reorganized Debtor, under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against or Equity Interest in the Debtor shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtor's or the Reorganized Debtor's obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 case or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in the Plan or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct.*

### E.    MODIFICATION OF PLAN

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan. "Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan."

### F.    FILING OF MONTHLY OR QUARTERLY OPERATING REPORTS AND U.S. TRUSTEE FEES

Once the Plan is substantially consummated and a Final Decree is entered, the Debtor in Possession will no longer be required to file with the Court and U.S. Trustee a monthly and/or quarterly operating report or pay U.S. Trustee's fees.

### G.    EFFECT OF CONFIRMATION

The Plan will be binding upon and inure to the benefit of Debtor, holders of Claims and Interests in Debtor, and their respective successors and assigns.

#### 1.  *Continued Corporate Existence*

The Reorganized Debtor shall continue to exist after the Effective Date with all powers of a corporation under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law; and. Following the Effective Date, Reorganized Debtor may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan and the Confirmation Order.

#### 2.  *Vesting of Assets*

Except as otherwise expressly provided in the Plan and the Confirmation Order, on the effective date, the Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, liens, encumbrances, charges and other interests.

### H.    RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, pursuant to §§ 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Case after the Effective Date as is legally permissible, including jurisdiction to:

> *(a)    To enable Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;*
> *(b)    To enable Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;*
> *(c)    To hear and determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;*
> *(d)    To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;*
> *(e)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date and the allowance of Claims resulting therefrom;*

(f)     To hear and determine the validity, extent and priority of all liens, if any, against property of the estate;

(g)     To hear and determine motions seeking a compromise, settlement, release, or abandonment of any contested claim

(h)     To hear and determine all applications for compensation and reimbursement and objections to Administrative Claims;

(i)     To hear and determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor or Liquidated Debtor prior to the Effective Date;

(j)     To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(k)     To hear and determine any tax liability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder,

(l)     To enforce any and all injunctions created pursuant to the terms of the Plan;

(m)     To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(n)     To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(o)     To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

(p)     To enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)     To enter a Final Decree pursuant to Bankruptcy Rule 3022.

## VI     CONCLUSION

For all the reasons set forth in the Disclosure Statement, the Debtor believes that confirmation and consummation of the Plan is preferable to all other alternatives. Consequently, the Debtor urges all eligible holders of Impaired Claims and Interests to vote to accept the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Bankruptcy Court.

*[Signatures to follow on next page]*

FLORIDA ORGANIC AQUACULTURE LLC., Debtor

By: _____
    Clifford Morris, Managing Member

MARKARIAN FRANK & HAYES
Attorneys for Debtor
2925 PGA Blvd., Suite 204
Palm Beach Gardens, FL 33410
(561) 626-4700
(561) 627-9479-fax

By: _____
    Malinda L. Hayes, Esq.
    Florida Bar No.: 0073503

**Exhibit A**
Proposed Plan of Reorganization
(See ECF#50, filed July 21, 2017)

**Exhibit B**
Summary of Most Recently Filed Operating Report – (ECF #49, filed on July 21, 2017)

UNITED STATES BANKRUPTCY COURT

SOUTHERN ___ DISTRICT OF ___ FLORIDA

WEST PALM BEACH ___ DIVISION

IN RE: } CASE NUMBER
 } 17-15012
FLORIDA ORGANIC AQUACULTURE LLC }
 } JUDGE   ERIK P. KIMBALL
 }
DEBTOR. } CHAPTER 11

DEBTOR'S STANDARD MONTHLY OPERATING REPORT (BUSINESS)

FOR THE PERIOD

FROM ___ 6/1/2017 ___ TO ___ 6/30/2017

Comes now the above-named debtor and files its Monthly Operating Reports in accordance with
the Guidelines established by the United States Trustee and FRBP 2015.


Markarian Frank & Hayes
Attorney for Debtor's Signature


Debtor's Address
and Phone Number:

930 W. Indiantown Road, Suite 204
Jupiter, FL 33458
(561) 741-3000

Attorney's Address
and Phone Number:

2925 PGA Blvd., Suite 204
Palm Beach Gardens, FL 33458
(561) 626-4700

Note: The original Monthly Operating Report is to be filed with the court and a copy simultaneously
provided to the United States Trustee Office. Monthly Operating Reports must be filed by the 20th day
of the following month.

For assistance in preparing the Monthly Operating Report, refer to the following resources on the
United States Trustee Program Website, ___ http://www.usdoj.gov/ust/r21/reg_info.htm
1) ___ Instructions for Preparations of Debtor's Chapter 11 Monthly Operating Report
2) ___ Initial Filing Requirements
3) ___ Frequently Asked Questions (FAQs) http://www.usdoj.gov/ust/

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS

| FOR THE PERIOD BEGINNING | 6/1/2017 | AND ENDING | 6/30/2017 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Name of Debtor: | FLORIDA ORGANIC AQUACULTURE, LLC | Case Number: | 17-15012-EPK |
| Date of Petition: | April 24, 2017 | | |

| | | CURRENT MONTH | CUMULATIVE PETITION TO DATE | |
|---|---|---|---|---|
| 1. | FUNDS AT THE BEGINNING OF PERIOD | $ 2,257.56 (a) | $ 3,652.59 (b) | |
| 2. | RECEIPTS: | | | |
| A. | Cash Sales | $ 1,669.28 | $ 4,473.41 | (see attachment 1) |
| | Minus: Cash Refunds (credit card refunds) | $ - | | |
| | Net Cash Sales | $ 1,669.28 | $ 4,473.41 | |
| B. | Accounts Receivable | $ 28,229.00 | $ 30,227.75 | |
| C. | Other Receipts *(See MOR-3)* | $ 96,532.05 | $ 186,240.41 | |
| | (If you receive rental income, you must attach a rent roll.) | | | |
| 3. | TOTAL RECEIPTS *(Lines 2A+2B+2C)* | $ 126,430.33 | $ 220,941.57 | |
| 4. | TOTAL FUNDS AVAILABLE FOR OPERATIONS *(Line 1+Line 3)* | $ 128,687.89 | $ 224,594.16 | |
| 5. | DISBURSEMENTS | | | |
| A. | Advertising EB 5 Marketing | $ 7,500.00 | $ 7,500.00 | |
| B. | Bank Charges | $ 460.30 | $ 705.36 | |
| C. | Processing Cost | $ 1,319.81 | $ 1,964.81 | |
| D. | Fixed Asset Payments (not incl. in "N") | $ - | $ - | |
| E. | Insurance | $ 1,128.77 | $ 2,257.54 | |
| F. | Inventory Payments *(See Attach. 2)* | $ - | $ 10,534.20 | |
| G. | Leases | $ 12,024.00 | $ 25,584.94 | |
| H. | Production Cost | $ 7,877.69 | $ 7,877.69 | |
| I. | Office Supplies | $ 243.63 | $ 338.17 | |
| J. | Payroll - Net *(See Attachment 4B)* | $ 27,030.14 | $ 46,670.89 | |
| K. | Professional Fees (Accounting & Legal) | $ 11,546.78 | $ 14,046.78 | |
| L. | Rent | $ - | $ - | |
| M. | Repairs & Maintenance | $ 4,958.47 | $ 6,535.29 | |
| N. | Secured Creditor Payments *(See Attach. 2)* | $ - | $ - | |
| O. | Taxes Paid - Payroll *(See Attachment 4C)* | $ 9,770.95 | $ 16,741.41 | |
| P. | Taxes Paid - Sales & Use *(See Attachment 4C)* | $ - | $ - | |
| Q. | Taxes Paid - Other *(See Attachment 4C)* | $ - | $ - | |
| R. | Telephone | $ - | $ - | |
| S. | Travel & Entertainment | $ - | $ - | |
| T. | U.S. Trustee Quarterly Fees | $ - | $ - | |
| U. | Utilities | $ 1,211.80 | $ 17,566.58 | |
| V. | Vehicle Expenses | $ - | $ - | |
| W. | Other Operating Expenses *(See MOR-3)* | $ 18,976.21 | $ 41,631.16 | |
| 6. | TOTAL DISBURSEMENTS *(Sum of 5A thru W)* | $ 104,048.55 | $ 199,954.82 | |
| 7. | ENDING BALANCE *(Line 4 Minus Line 6)* | $ 24,639.34 (c) | $ 24,639.34 (c) | |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This **20** day of **June**, **2017**                                        _____ (Signature)

(a)   This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.

(b)   figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.

(c)   These two amounts will always be the same if form is completed correctly.

**Exhibit C**
Claims Analysis

**EXHIBIT C**

**List of Scheduled, Undisputed Unsecured Claims in which the Claimant did not also file a Proof of Claim**

| Claimant Name | Type of Claim | Description Pursuant to Schedules Filed | Amount Claimed |
|---|---|---|---|
| Affordable Water & Coffee Service (5532) | Unsecured Nonpriority | Office Supplier | $1,747.17 |
| All-Rite Water Purification | Unsecured Nonpriority | Office Supplier | $1,286.00 |
| Arnold Surveying, Inc. | Unsecured Nonpriority | Professional Services | $5,550.00 |
| Bank of America (2840) | Unsecured Nonpriority | Business Revolving Credit Card Charges | $9,101.95 |
| Bank of America (8483) | Unsecured Nonpriority | Business Revolving Credit Card Charges | $54,991.52 |
| Cargill Animal Nutrition (5583) | Unsecured Nonpriority | Feed Supplier | $34,015.23 |
| Cemex Construction Materials (8823) | Unsecured Nonpriority | Cement Supplier | $1,434.54 |
| Chemical Containers (2604) | Unsecured Nonpriority | Equipment | $4,720.00 |
| Clifford Morris | Unsecured Nonpriority | Deferred Compensation | $675,085.00 |
| EcoMicrobials LLC (721) | Unsecured Nonpriority | Probiotic/Grow out Supplies | $2,840.00 |
| Ecotech Consultants, Inc. | Unsecured Nonpriority | Professional Services | $7,500.00 |
| Fellsmere Joint Venture LLC | Unsecured Nonpriority | Rent | $105,980.77 |
| Fellsmere Water Control District | Unsecured Nonpriority | Professional Services (inspection charge) | $7,397.00 |
| First Insurance Funding Corp. (2708) | Unsecured Nonpriority | Workers Compensation Insurance | $25,349.00 |
| Florida City Gas – B2 (7154) | Unsecured Nonpriority | Utilities | $18,132.83 |
| Florida City Gas – PH (5286) | Unsecured Nonpriority | Utilities | $566.32 |
| Glover Oil Co. Inc. (0013) | Unsecured Nonpriority | Diesel Supplier | $1,357.53 |
| Green Energy Solutions of FL, LLC | Unsecured Nonpriority | Insulation Building Supplier | $28,224.93 |
| Harrington Industrial Plastics LLC (2765) | Unsecured Nonpriority | Electrical Supplier | $1,500.00 |

1

| | | | |
|---|---|---|---|
| Helen Ming | Unsecured Nonpriority | Loan | $100,000.00 |
| Indian River Oxygen (0A04) | Unsecured Nonpriority | Production Supplier | $3,987.21 |
| Jeff Moneyhan Electrical, LLC | Unsecured Nonpriority | Electrical Contractor | $8,015.00 |
| Kim Riley Commercial Services, Inc. | Unsecured Nonpriority | Professional Services | $1,151.20 |
| Lone Peak Labeling Systems | Unsecured Nonpriority | Packing Supplies | $1,352.98 |
| Mid-State Mechanical of Vero Beach | Unsecured Nonpriority | Maintenance Supplier | $6,500.00 |
| North South Supply Inc. | Unsecured Nonpriority | Finance Charges | $53.18 |
| Sunwell (0716) | Unsecured Nonpriority | Part Supplier | $971.14 |
| Vero Chem Distributors | Unsecured Nonpriority | Chemical Supplier | $15,091.00 |
| **TOTAL** | | | **$1,123,901.50** |

**List of Unsecured Claims Filed Against Debtor**

| Claim No. | Claimant Name | Type of Claim | Description Pursuant to Proof of Claim Filed | Amount Claimed/ (Amount Scheduled) |
|---|---|---|---|---|
| 1 | Mac Papers (FL07) | Unsecured Nonpriority | Goods Sold | $2,232.93 |
| 2 | U.S. Dept. of Treasury – IRS | Unsecured Nonpriority | Taxes | $400.00 |
| 3 | Business First (9954) | Unsecured Nonpriority | Workers' Comp Insurance Premium | $29,634.52 |
| 4 | Uline Shipping Supplies (1329) | Unsecured Nonpriority | Goods Sold | $3,948.61 |
| 7 | Uline Shipping Supplies | Unsecured Nonpriority | Goods Sold | $3,948.61 |
| 10 | FedEx Corporate Services, Inc. (8385) | Unsecured Nonpriority | Services Performed | $1,073.59 |
| 11 | Zeigler Bros., Inc. | Unsecured Nonpriority | Goods Sold | $42,812.51 |
| 13 | First Home Bank | Unsecured Nonpriority | Mortgage & Security Agreement, UCC-1 Financing Statements | $0 (Duplicate of claim #12) |
| 16 | AvkaGroup North America | Unsecured Nonpriority | Supply of Feeding System hardware, Software and Related | $41,795.60 |

2

|  |  |  | Commissioning Expenses |  |
|---|---|---|---|---|
| **TOTAL** |  |  |  | **$125,846.37** |

**List of Scheduled, Undisputed Secured Claims in which the Claimant did not also file a Proof of Claim**

| Claimant Name | Type of Claim | Description Pursuant to Schedules Filed | Amount Claimed |
|---|---|---|---|
| Star Capital Group | Secured | PMSI per UCC-1 | $45,490.00 |
| US Bank | Secured | PMSI per UCC-1 | $42,686.42 |
| **TOTAL** |  |  | **$88,176.42** |

**List of Secured Claims Filed Against Debtor**

| Claim No. | Claimant Name | Type of Claim | Description Pursuant to Proof of Claim Filed | Amount Claimed |
|---|---|---|---|---|
| 8 | Direct Capital Corporation | Secured | Equipment Purchased | $67,098.90 |
| 9 | M2 Lease Funds LLC | Secured | Money Loaned | $47,895.00 |
| 12 | First Home Bank | Secured | Mortgage & Security Agreement, UCC-1 Financing Statements | $5,359,368.90 |
| 14 | Royal Bank America Leasing, L.P. | Secured | UCC-1 Filed | $166,462.64 |
| 15 | Mirzam Venture Capital, LLC | Secured | UCC-1 Filed | $4,800,000.00 |
| **TOTAL** |  |  |  | **$10,440,825.44** |

**List of Priority Tax Claims Filed Against Debtor**

| Claim No. | Claimant Name | Type of Claim | Description Pursuant to Proof of Claim Filed | Amount Claimed |
|---|---|---|---|---|
| 2 | U.S. Dept. of Treasury – IRS | Priority Unsecured | Taxes | $2,506.75 |
| 5 | Indian River County Tax Collector (5911) | Priority Unsecured | 2016 Tangible Personal Property Tax | $17,421.77 |
| 6 | Indian River County Tax Collector (5911) | Priority Unsecured | 2017 Tangible Personal Property Tax | $17,154.45 |
| **TOTAL** |  |  |  | **$37,082.97** |

**List of scheduled Disputed Claims in which the Claimant did not also file a Proof of Claim**

| Claimant Name | Description Pursuant to Schedules Filed | Priority | Secured | Unsecured | Amount Claimed |
|---|---|---|---|---|---|
| Business GPS, LLC | Professional Services | | | $26,808.33 | $26,808.33 |
| City of Fellsmere | Audit of City Roads | | | $27,332.85 | $27,332.85 |
| Florida City Gas | Utilities | | | $51,709.34 | $51,709.34 |
| Gregor Jonsson, Inc. | Equipment Lease | | | $33,711.24 | $33,711.24 |
| Guarantee Insurance Company | Workers Compensation Insurance | | | $9,534.00 | $9,534.00 |
| Herc Rental Inc. | Equipment Lease | | | $32,809.73 | $32,809.73 |
| Imagenet | Printer Supplies | | | $662.49 | $662.49 |
| Intelligent Global Pooling Systems | Pallets Supplier | | | $5,525.00 | $5,525.00 |
| John Deere Financial | UCC-1 Lien on Equipment | | $18,415.00 | | $18,415.00 |
| Ozone International | UCC-1 Lien | | $48,000.00 | | $48,000.00 |
| Smart Building Florida | Services | | | $38,901.36 | $38,901.36 |
| State of Florida Division of Workers Comp | Workers Compensation Penalty | | | $54,245.64 | $54,245.64 |
| Terramar Development, LLC | UCC-1 Lien | | $62,000.00 | | $62,000.00 |
| United Rentals (8189) | Equipment Lease | | | $28,910.03 | $28,910.03 |
| **Total** | | | | | **$438,565.01** |

4

**Exhibit D**
Projections of Cash Flow and Earnings for Post-Confirmation Period

**Florida Organic Aquaculture LLC**

**Scenario Choice**

Processed Shrimp sales | 2017 forecast shrimp sales ▼

EB5 Investment Inflows | 1 Investor every 2 months ▼

**12 Months Cash Flow Projection From Receipt of Working Capital**

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue cash inflow** | | | | | | | | | | | | | |
| Fresh & processed shrimp sales | 18,908 | | 146,213 | 174,118 | 14,756 | | 132,375 | 141,369 | 12,681 | | 104,700 | 124,995 | 870,114 |
| Value add sales | 66,200 | | 509,000 | 532,760 | 71,600 | | 500,000 | 652,040 | 79,160 | | 600,800 | 711,680 | 3,723,240 |
| Retail store sales | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 138,000 |
| Sales discount | | | | | | | | | | | | | |
| Other income | | | | | | | | | | | | | |
| **Total revenue cash inflow** | 96,608 | 11,500 | 666,713 | 718,378 | 97,856 | 11,500 | 643,875 | 804,909 | 103,341 | 11,500 | 717,000 | 848,175 | 4,731,354 |
| **Payments** | | | | | | | | | | | | | |
| **Production cash outflow** | | | | | | | | | | | | | |
| Production facility 1 | 83,593 | 55,543 | 55,543 | 45,543 | 64,243 | 73,593 | 45,543 | 45,543 | 45,543 | 64,243 | 73,593 | 55,543 | 708,061 |
| Production facility 2 | 60,657 | 60,657 | 60,657 | 89,927 | 63,747 | 50,657 | 50,657 | 50,657 | 89,927 | 63,747 | 50,657 | 60,657 | 752,599 |
| Processing facility | 14,650 | 14,650 | 14,650 | 14,650 | 14,650 | 14,650 | 14,650 | 14,650 | 14,650 | 14,650 | 14,650 | 14,650 | 175,800 |
| Value add outsourced processing | 9,180 | | 68,850 | 81,473 | 11,475 | | 76,500 | 99,578 | 12,623 | | 91,800 | 108,630 | 560,108 |
| Retail store | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 |
| Non-operating centres | | | | | | | | | | | | | |
| Cost of goods sold - other | | | | | | | | | | | | | |
| **Total production cash outflow** | 168,679 | 131,449 | 200,299 | 232,192 | 154,714 | 139,499 | 187,949 | 211,027 | 163,342 | 143,239 | 231,299 | 240,079 | 2,203,768 |
| Net opening/(closing) inventory | | 6,000 | | | | 6,000 | | | | 6,000 | | 6,000 | 24,000 |
| **Gross margin cash flow** | (72,072) | (125,949) | 466,413 | 486,186 | (56,858) | (133,999) | 455,926 | 593,883 | (60,001) | (137,739) | 485,701 | 602,096 | 2,503,587 |
| **Gross margin %** | -75% | -1095% | 70% | 68% | -58% | -1165% | 71% | 74% | -58% | -1198% | 68% | 71% | 53% |
| **Overhead cash outflow (excluding depreciation)** | | | | | | | | | | | | | |
| Production overhead | 84,894 | 33,919 | 33,919 | 64,894 | 33,919 | 33,919 | 64,894 | 35,619 | 33,919 | 64,894 | 33,919 | 33,919 | 552,628 |
| Selling & distribution overhead | 2,831 | 2,831 | 2,831 | 2,831 | 2,831 | 2,831 | 2,831 | 2,831 | 2,831 | 2,831 | 2,831 | 2,831 | 33,972 |
| Administration overhead | 46,720 | 46,720 | 46,720 | 46,720 | 46,720 | 46,720 | 46,720 | 46,720 | 46,720 | 46,720 | 46,720 | 46,720 | 560,640 |
| Retail store overhead | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | 4,477 | 53,724 |
| **Total overhead cash outflow** | 138,922 | 87,947 | 87,947 | 118,922 | 87,947 | 87,947 | 118,922 | 89,647 | 87,947 | 118,922 | 87,947 | 87,947 | 1,200,964 |
| **Operating cash flow** | (210,994) | (213,896) | 378,466 | 367,264 | (144,803) | (221,946) | 337,004 | 504,236 | (147,948) | (256,661) | 397,754 | 514,149 | 1,302,623 |

## Basic Revenue and Expenditure Projection for FOA as at June 2017

| | | **Annualized** |
|---|---|---|
| **Harvest** -At full weekly cycle | | |
| **Building 1 configured with 20 raceways** | | |
| 830 m^3 Raceway x 3.5 kg/m^3 = | 2,905kg /6,391 lbs. | 332,332 lbs. |
| **Building 2 configured with 16 raceways** | | |
| 1080 m^3 Raceway x 3.5kg /m^3 = | 3,780kg /8,316 lbs. | 432,432 lbs. |
| **Weekly Harvest** | | |
| Less 30% (contingency allowance) (14,707 − 4,412)= 10,295 lbs. | | 535,340 lbs. |

| | | |
|---|---|---|
| **Revenue** (per week) 10,295lbs. x $8.00/lb. = | $ 82,360 | |
| **Less** 12.5% waste and quality control contingency. | $ 10,295 | |
| **Weekly projected revenue** | $ 72,065 | |
| **Revenue Monthly**     weekly x 4.3333 | **$312,276** | $3,747,312 |

| | | |
|---|---|---|
| **Current Budgeted Expenses** | | |
| Operating cost at full operating capacity | | |
| Labor, Utilities, Feed, Admin, Processing | | |
| Rent, Debt service, Leases (equipment) | **$210,000** | -$2,520,000 |

| | | |
|---|---|---|
| **Net Cash Flow (per Month)** | **+$102,276** | +$1,227,312 |

Notes;

1) This schedule takes into consideration the time needed to clean, prime and restock each raceway.
2) These projections are based on actual realized harvest numbers through inception of the project to current. Including Good, Bad and Ugly harvests. For all intents and purposes these yield numbers should improve somewhat considerably as FOA moves into more consistent and predictable cycles.